# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| NATHAN THOMAS COCHRAN, | : | PRISONER CIVIL RIGHTS |
| Inmate No. 2307742, | : | 42 U.S.C. §1983 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| SHERIFF PATRICK LABAT; et al., | : | 1:23-CV-3773-SDG-JKL |
| Defendants. | : | |

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

Plaintiff, who is being held at the Fulton County Jail ("FCJ") in Atlanta, Georgia, filed this *pro se* civil rights complaint under 42 U.S.C. §1983 and has been granted leave to proceed *in forma pauperis*. (Docs. 1, 3). The matter is before the Court for a frivolity screening pursuant to 28 U.S.C. §1915A.

## I.  28 U.S.C. §1915A FRIVOLITY REVIEW

Pursuant to 28 U.S.C. §1915A, a federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§1915A(b). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (internal quotation marks and citations omitted). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief[.]" Fed. R. Civ. P. 8(a)(2). "A plaintiff . . . must plead facts sufficient to show that [his] claim has substantive plausibility" and to inform the defendant of "the factual basis" for the complaint. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014).

In reviewing whether a plaintiff has stated a claim, the Court presumes the truth of a plaintiff's non-frivolous factual allegations, construing them in the plaintiff's favor. *Gissendaner v. Commissioner, Ga. Dep't of Corr.*, 803 F.3d 565, 578 (11th Cir. 2015). Additionally, the Court holds *pro se* pleadings to a less stringent standard than pleadings drafted by lawyers, *Bingham*, 654 F.3d at 1175, but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.") (internal quotation marks and citation omitted).

## II.   DISCUSSION

### A.   Plaintiff's Allegations[1]

Plaintiff has named nineteen Defendants, all of whom work at the FCJ. Plaintiff complains that: (1) on May 18, 2023, he spent three days in a holding cell in the booking area with approximately thirty people, which was covered in urine and feces and which exposed him to violent offenders; (2) on May 20, 2023, he

---

[1]    The factual allegations are taken from Plaintiff's complaint [Doc. 1], and are presumed true for purposes of the §1915A screening. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

received his classification and was not placed in the "alternative lifestyle" area, which put him at risk to be harmed by homophobic violent inmates since he is openly gay; (3) on May 26, 2023, Plaintiff went to general population and filed a grievance for "fear and safety" based on his sexuality; (4) after numerous attempts to be relocated to the "alternative lifestyle" area, he was sexually assaulted, forced to perform oral sex, and sodomized by one particular inmate on several occasions, about which he notified the Prison Rape Elimination Act ("PREA") officer and Officer Thornton-Reid;[2] (5) on May 30, 2023, he hit his head on the top bunk, causing a laceration which needed staples, but when he notified officers and Naphcare nurses at 2:43 a.m., they refused to take him to the medical floor and "it was then to [sic] late to receive staples;" (6) on July 22, 2023, during the summer heatwave there was a massive power outage from 11:30 a.m. until 8:42 p.m., there were no lit floodlights or emergency exit signs, back-up power generators, air, water, flushing toilets, security cameras, no elevators to deliver food and inmates did not eat for thirty-six hours, and for four days after the outage elevators only functioned at twenty-five percent capacity; (7) during the summer heatwave Plaintiff witnessed the stabbing of another inmate who died; (8) on August 1, 2023, the elevators remained malfunctioning and Plaintiff did not receive dinner; (9) on August 4 and August 11, 2023, there was no hot water, deterring inmates from showering, which

---

[2]      Plaintiff does not specify who he notified in connection with the PREA.

increased unsanitary conditions and poor hygiene; (10) on September 11, 2023, Plaintiff's dorm was exposed to an infestation of bed bugs and, due to the exposure thereto, an inmate died on September 22, 2023; (11) Plaintiff has been denied access to the law library and access to the courts; (12) the commissary department has failed to refund and provide $88.26 of credit to Plaintiff for store goods; (13) the FCJ is extremely overcrowded putting inmates in danger of violence; (14) Plaintiff has been exposed to black mold, poor air ventilation and second-hand smoke, leaking and malfunctioning toilets and showers; extreme and frustrating heat temperatures; exposure to infestations, corruption of officers; exposure to armed and violent inmates equipped with knives, poor lighting conditions, that is, the lights in the crowded dayroom stay on 24/7 where a minimum of fifteen inmates are sleeping and there are no lights in inmate cells, and Plaintiff has been denied access to medical treatment; (15) Plaintiff has been threatened with a knife during the commission of an extortion attempt; and (16) all doors are inoperable with damaged locks that prevent doors from closing for inmates to be able to secure themselves in times of violence.   Plaintiff seeks equitable relief and monetary damages.

**B.**   **Analysis of Plaintiff's Allegations**

As an initial matter, Plaintiff's amended complaint contains many unrelated incidents on different dates and against different Defendants, which arguably may not be properly joined under Rule 20 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 20(a)(2)(A)-(B) (providing that a plaintiff may not use a single complaint to join unrelated claims against different defendants that do not both (a) arise from "the same transaction, occurrence, or series of occurrences" and (b) involve a "question of law or fact common to all defendants"); *Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015) (affirming dismissal of prisoner complaint since it "alleged a variety of unrelated claims against different correctional officers, arising out of different events and occurring on different dates" which were not sufficiently related under Rule 20 to permit joinder); *see also George v. Smith*, 507 Fl3d 605, 607 (7th Cir. 2007) ("[A] suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected" under Rule 20).  Additionally, many of the allegations in the complaint consists of generalizations and legal conclusions unsupported by specific factual allegations, which do not state a claim upon which relief may be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

And finally, Plaintiff relates several events where other inmates incurred injuries, claims for which Plaintiff has no standing to raise. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-72 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[.]'") (citations omitted); *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("'Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.'") (citations omitted); *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994) ("To establish standing, a plaintiff must have 'suffered an injury-in-fact that would be corrected by [a] favorable decision in the lawsuit.'") (alteration in original) (citations omitted). Although the Court holds *pro se* pleadings to a less stringent standard than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a plaintiff must allege facts sufficient to show a recognized legal claim and the Court cannot read into a complaint non-alleged facts. *Beck v. Interstate Brands Corp.* 953 F.2d 1275, 1276 (11th Cir. 1992).

Nevertheless, liberally construing Plaintiff's allegations in light of his *pro se* status as I must do, I will consider these allegations as part of the totality of circumstances related to his complaints about the conditions of confinement at the FCJ.

1.    <u>Access to the Courts</u>

To the degree that Plaintiff complains that he has limited or no access to the law library, while inmates have a right to meaningful access to the courts and jails and prisons must provide prisoners with, *inter alia*, adequate libraries to effect that right, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), inmates do not have a freestanding right to a law library.  *See Ferguson v. Warden, Everglades Re-Entry Ctr.*, 714 F. App'x 966, 967 (11th Cir. 2018) ("[T]here is no freestanding right to a law library, litigation tools, or legal assistance[.]"); *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998) ("While *Bounds* guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance.").  Instead, access to a law library is simply one method by which a state can insure that inmates have meaningful access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).

Regardless, in order to state a viable access to the courts claim, a plaintiff must allege facts demonstrating that he has suffered from actual harm, in that an official's action frustrated his efforts to pursue a non-frivolous prosecution of a direct appeal of a conviction, habeas petition, or civil rights suit.  *Id.* at 349; *see also Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (stating that the actual injury requirement means that a prison official's actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a

nonfrivolous post-conviction claim or civil rights action); *Bass v. Singletary*, 143 F.3d 1442, 144-45 (11th Cir. 1998) (stating that in order to show actual injury the plaintiff must show that jail officials "frustrated or impeded [his] efforts to pursue a nonfrivolous legal claim" which "must be an appeal from a conviction for which [he] was incarcerated, a habeas petition, or a civil rights action.").

Plaintiff simply states in a conclusory manner that he has been denied access to the law library and does not provide any supporting facts to show how that lack of access hindered him from pursuing a specific legal claim. Consequently, he has failed to state a viable access to the courts claim. *See Thomas v. Warner*, 237 F. App'x 435, 437 (11th Cir. 2007) (finding conclusory statement that prisoner was denied access to law library failed to state claim because he did not provide facts as to how efforts to pursue state habeas relief were hindered thereby); *see also Vetcher v. Immigr. and Customs Enf't*, 844 F. App'x 691, 695 (5th Cir. 2021) (finding conclusory statements that law library was inadequate and that plaintiff lacked proper assistance did not show actual injury for access to courts claim); *Johnson v. Miller*, 387 F. App'x 832, 839 (10th Cir. 2010) ("[W]e have rejected a prisoner's conclusory allegations that a prison's law library limited his access to the courts when the prisoner 'did not describe sufficiently the legal materials he was seeking; he did not clarify that the [prison's law] library and its resources were inadequate

for his needs; and he did not explain that his legal claim was nonfrivolous.'") (alteration in original) (citations omitted).

### 2.   Classification

Insofar as Plaintiff complains that he consistently was denied his request to be placed in the alternative lifestyle area of the FCJ, on its own any such denial does not state a claim under §1983.  Indeed, a prisoner has no constitutional right to a particular classification or to be housed in a particular section of a prison facility. *Olim v. Waknekona*, 461 U.S. 238, 244-46 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976).  This claim, therefore, also does not state a cognizable claim for relief.[3]

### 3.   Medical Deliberate Indifference

Plaintiff's medical deliberate indifference claim also should not proceed beyond this frivolity stage.  Delayed or denied access to medical care for inmates may violate the Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  In order to demonstrate deliberate indifference to a serious medical need, a plaintiff must show (1) an objectively serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the official's deliberate indifference and the plaintiff's injury.  *Melton v. Abston*, 814 F.3d 1207, 1219 (11th

---

[3]      I would note, however, that the fact that Plaintiff was not placed in the alternative lifestyle area of the FCJ could be considered as part of Plaintiff's failure to protect claim.

Cir. 2016), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544

(2007). "A core principle of Eighth Amendment jurisprudence in the area of medical

care is that prison officials with knowledge of the need for care may not, by failing

to provide care, delaying care, or providing grossly inadequate care, cause a prisoner

to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*,

182 F.3d 1248, 1257 (11th Cir. 1999).

In determining whether a delay in treatment rises to the level of deliberate

indifference, relevant factors include: "(1) the seriousness of the medical need; (2)

whether the delay worsened the medical condition; and (3) the reason for the delay."

*Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "[T]he delay of

treatment for obviously serious conditions [rises to the level of deliberate

indifference] where 'it is apparent that delay would detrimentally exacerbate the

medical problem,' the delay does seriously exacerbate the medical problem, and the

delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir.

2000).

Here, Plaintiff alleges that he hit his head on the top bunk and suffered from

a laceration that needed staples, officers and nurses refused to take him to the

medical floor at 2:43 a.m., and then it was too late for him to receive any such staples.

Plaintiff does not elaborate on the nature of the laceration – such as the size and

depth thereof and whether or how much he was bleeding – and he fails to provide

any information as to why he thought he needed staples, *i.e.,* if he actually was told by medical personnel that staples were necessary or if it was his own lay opinion. Nor does Plaintiff indicate if or when he was examined, and/or why or how it was "too late" for him to receive any such staples.   These vague and conclusory allegations are not enough to state a medical deliberate indifference claim.  *See, e.g., Bryant v. Efringham Cnty. Jail*, No. CV423-024, 2023 WL 2307441, at *1 (S.D. Ga. Mar. 1, 2023) (finding allegation of unspecified "eye condition" too vague to allege a serious medical need); *McGill v. Riverbend Corr. Facility*, No. 5:22-CV-418-MTT-CHW, 2023 WL 2061168, at *5 (M.D. Ga. Feb. 16, 2023) (finding vague description of prisoner's chapped lips and that at some point the skin texture was burned and the coloration became too bright, was too vague to show plaintiff suffered a serious medical need); *Fuller v. Nearer*, No. 2:13-CV-417-TMH, 2013 WL 5532540, at *3 (M.D. Ala. Oct. 7, 2013) (finding vague and generalized allegations of inadequate medical care did not plausibly show that defendants acted with deliberate indifference).

A serious medical need also "is determined by whether a delay in treating the need worsens the condition." *Mann v. Taser, Int'l Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).   And lacerations generally do not constitute an objectively serious medical need.  *See Lockett v. Suardini*, 526 F.3 866, 877 (6th Cir. 2008) (finding "minor lacerations and cuts" which were no longer obvious upon medical

11

examination within twenty-four hours after altercation were not serious medical needs); *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991) (finding one-inch laceration not a serious medical need); *Booker v. Ervin*, No. 6:17-cv-15, 2019 WL 1085192, at *3 (S.D. Ga. Mar. 7) ("Cuts and bruises that require only minor treatment are not a serious medical need for purposes of Eighth Amendment claims."), *report and recommendation adopted by* 2019 WL 1440311 (S.D. Ga. Mar. 29, 2019); *Young v. United States*, No. 5:13-CV-609-Oc-29PRL, 2015 WL 3605052, at *6 (M.D. Fla. June 8, 2015) ("Generally, other courts addressing bruises and lacerations have concluded that they do *not* constitute an objectively serious medical need.") (emphasis in original) (collecting cases); *Benitez v. Locastro*, No. 9:04-CV-423 (NAM/RET), 2010 WL 419999, at *7 (N.D. N.Y. Jan. 29, 2010) ("With respect to [plaintiff's] claims of bruises and a laceration (the size and depth of which he does not allege), those generally pleaded injuries do not constitute serious medical conditions under the Eighth Amendment."). This reasoning applies even if the laceration needs stitches. *See Bailey v. Feltmann*, No. 4:14-CV-47 CAS, 2014 WL 7185885, at *5 (E.D. Mo. Dec. 16, 2014) ("[C]ourts have held that no objectively serious medical need existed even though the plaintiff alleged it was deliberate indifference not to provide stitches to suture a laceration.").

Here, Plaintiff has not described the laceration, he has not demonstrated that it was apparent that a delay in treatment would detrimentally exacerbate it, and his

statement that it was "too late" for him to receive staples does not show that the delay did, in fact, worsen his condition. Plaintiff, therefore, has not stated a cognizable medical deliberate indifference claim, and it should be dismissed. *See Bailey*, 2014 WL 7185885, at *6 ("Courts have also held that a delay in providing treatment for a laceration requiring stitches does not constitute deliberate indifference to a serious medical need."); *Willacy v. Cnty. of Brevard*, No. 04-VV-1666ORL18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (finding minor delay of medical attention to laceration could not be construed as deliberate indifference because laceration was not a serious medical injury).

### 4.   Commissary Refund

To the degree that Plaintiff complains that the commissary has failed to refund his money, those allegations also do not state a cognizable claim under §1983. Specifically, a plaintiff cannot establish a due process violation when state law provides an adequate post-deprivation remedy for a state actor's unauthorized taking of property. *See McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding allegations of unauthorized deprivation of property – whether intentional or negligent – do not state a procedural due process claim when an adequate state remedy exists to redress the deprivation).

13

The State of Georgia has, in fact, "provided an adequate post deprivation remedy when a plaintiff claims that the state has retained his property without due process of law," *i.e.,* a civil cause of action for the wrongful deprivation of personal property, which encompasses any such deprivation by officers. *Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987); *see also* O.C.G.A. §51-10-1 (providing a cause of action for the wrongful deprivation of person property). Because Plaintiff has an adequate post-deprivation remedy under Georgia law, he fails to state a constitutional claim for the commissary's failure to refund his money.

    5.    Conditions of Confinement

To state a plausible claim that living conditions violate an inmate's constitutional rights, the inmate must allege facts that (1) the alleged deprivation is objectively serious, *i.e.,* there is a substantial risk of harm; (2) the defendant acted with deliberate indifference to that risk; and (3) the defendant's deliberate indifference caused the constitutional deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Carter v. Galloway*, 352 1346, 1349 (11th Cir. 2004). "The challenged condition must be extreme" and pose "an unreasonable risk of serious damage to [the inmate's] future health or safety[.]" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks and citations omitted). "Generally speaking, prison conditions rise to the level of an Eighth Amendment

14

violation only when they involve the wanton and unnecessary infliction of pain."[4] *Id.* (quotation marks omitted).

"Merely showing that prison conditions are uncomfortable is not enough." *Bennett v. Chitwood*, 519 F. App'x 569, 574 (11th Cir. 2013). The law is clear that the "Constitution does not mandate comfortable prisons" or proscribe harsh jail conditions, *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981), and "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (citations omitted). What's more, "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

  a. *Food*

Plaintiff's allegations that the food is served cold, "while unpleasant, does not amount to a constitutional deprivation," *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985), and "apparently is an ordinary incident in prison life."

---

[2] Conditions of confinement for pre-trial detainees are analyzed under the Fourteenth Amendment Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1318 (11th Cir. 2005). However, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Id.* (quotation marks and citations omitted).

*Thaddeus-X v. Blatter*, 175 F.3d 378, 404 (6th Cir. 1999) (Suhrheinrich, J., dissenting) (citing cases); *see also Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008) ("We also agree with the District Court's dismissal of Laufgas's claim that the prison's failure to provide two hot meals a day constituted a violation of his constitutional rights."); *Harmon v. Pickering*, No. 94-3033, 1995 WL 687628, at *1 (7th Cir. Nov. 15, 1995) (holding that prisoner receiving cold food did not raise a constitutional concern because "the temperature of food is irrelevant" and "[p]rison food must be nutritious but need not be tasty"); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food); *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) (holding no constitutional right to hot meals).

Likewise, Plaintiff has failed to state a claim with regard to the fact that occasionally he has not received meals. To that end, other than a conclusory statement that the meals "lack portions and nutrition," Plaintiff does not allege that he lost weight or has negatively impacted his health or caused him to suffer any serious physical injuries therefrom. This claim, therefore, also is not cognizable under §1983. *See Moulds v. Bullard*, 345 F. App'x 387, 393 (11th Cir. 2009) (affirming district court's dismissal of, *inter alia*, prisoner's claim that he was not receiving enough food, because he provided no "details about the size and nutritional value of the meals he continued to receive" or the "severity of the hunger pangs and

weight loss caused by the loss of his lunch meals"); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (affirming district court's finding that prisoner failed to state a claim about routine deprivation of lunch five days a week for five months, as he did not alleged that he was deprived of the other two daily meals or suffered physical harm from the deprivation); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 241 (N.D.N.Y. 2019) (finding inmate failed to state a claim about raw or undercooked food because he did not allege that he suffered any injury as a result of ingesting it); *Boone v. Maclaren*, No. 2:16-CV-271, 2017 WL 3015771, at *4 (W.D. Mich. July 17, 2017) (finding inmate failed to state a claim when alleging, *inter alia*, that he was being given undercooked and/or raw food because he did not allege that he suffered any problems with his health or that the meals he received were inadequate to sustain his health); *Kinner v. Moore*, No. 15-2105-JDT-TMP, 2016 WL 1421016, at *9-10 (W.D. Tenn. Apr. 8, 2016) (finding plaintiff failed to state a claim because he did not allege that he suffered actual physical harm from the food, or any lack thereof).

b.    *Temporary Deprivations*

Plaintiff's complaints regarding conditions in the holding cell for three days, the power outage for several hours, and the loss of hot water for two days all were temporary conditions and thus do not constitute extreme deprivations. *See Ellis v. Pierce Cnty., Ga.*, 415 F. App'x 215, 218 (11th Cir. 2011) (finding fact that detainee

17

was denied access to a shower on several occasions during his fifteen month detention was insufficient to show a constitutional violation); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing conditions of confinement claims where "Plaintiff alleged only temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."). Thus, these allegations do not state a plausible conditions of confinement claim.

c.  *Failure to Protect*

Plaintiff appears to raise a failure to protect claim in connection with the inmate who repeatedly sexually assaulted him. Prison officials are required to "'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (quoting *Farmer*, 511 U.S. at 832. To succeed on any such claim, a plaintiff must show: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the prison official had a "sufficiently culpable state of mind," *i.e.,* deliberate indifference; and (3) that the constitutional violation caused his injuries. *Id.* at 1357-58. Deliberate indifference contains a subjective component, *i.e.,* that the defendant actually knew that the prisoner faced a substantial risk of serious harm. *Id.* The prisoner also must demonstrate an objective component, that is, that the defendant disregarded any such substantial risk and thus failed to respond thereto in an objectively reasonable manner. *Id.*

18

"An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007) (internal quotation marks omitted). In determining whether a prison official acted reasonably, courts "consider what actions they took, if any, as well as available alternatives that might have been known to them." *Howard v. Waide*, 534 F.3d 1227, 1240 (10th Cir. 2008). "Merely negligent failure to protect" an inmate from an attack does not give rise to a §1983 claim. *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff states that as an openly homosexual prisoner he was afraid that he would be assaulted if he was placed in general population, on many occasions he requested that he be placed in the alternative lifestyle area of the FCJ, and that he was, in fact, sexually assaulted on several occasions by the same inmate. It is not clear whether Officer Thornton-Reid knew about Plaintiff's requests to be placed in the alternative lifestyle area; nor is it clear what Plaintiff told Officer Thorton-Reid or when. Still, construing his allegations liberally as I must, I find that Plaintiff has stated a plausible claim that Thornton-Reid was subjectively aware that Plaintiff faced a substantial risk of sexual assault from the other inmate and failed to respond thereto in an objectively reasonable manner. *See, e.g., Howard*, 534 F.3d at 1240-

19

41 (reversing summary judgment to prison officials where plaintiff showed that prison officials knew he faced ongoing risk from prison gang based on his sexual orientation, had reasonable available responses but did nothing, and he was threatened, sexually assaulted, and prostituted against his will by gang members); *Diamond v. Owens*, 131 F. Supp. 3d 1346, 1379 (M.D. Ga. Sept. 14, 2015) (finding transgender prisoner stated deliberate indifference claim where officials were aware of the risk of sexual assault and "despite having the authority and obligation to take reasonable safety measures" after each incident failed to take any action allowing prisoner to suffer more sexual assaults). Plaintiff's failure to protect claim should therefore be allowed to proceed.

### d.   *Other Conditions*

Finally, Plaintiff describes a litany of objectionable conditions at the FCJ. In determining the constitutionality of the conditions of confinement, the Court must look to 'contemporary standards of decency,' . . . to ascertain whether those conditions deprived [the plaintiff] of 'the minimal civilized measure of life's necessities.'" *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (citations omitted). While "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists," *Wilson v. Seiter*, 501 U.S. 294, 305 (1991), a court can consider the totality of the conditions together, *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576

(11th Cir. 1985).  But in order to violate due process, the conditions about which the plaintiff complains "must, at a minimum, have deprived him 'of a single human need.'"  *Jordan*, 38 F.3d at 1565 (quoting *Wilson*, 501 U.S. at 305); *see also Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 22-10306, 2022 WL 1124753, at *10 (11th Cir. Apr. 15, 2022) (per curiam) ("Indeed, certain 'conditions of confinement may establish an Eighth Amendment violation' 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise.").  As but one example, "there is a well-established Eighth Amendment right not to be confined . . . in conditions lacking either basic sanitation or hygiene." *Id.* (internal quotation marks and citations omitted); *see also Brooks v. Warden*, 800 F.3d 1295, 1401 (11th Cir. 2015).

Here, the conditions at the FCJ about which Plaintiff complains – *i.e.,* an infestation of bed bugs in his dorm where exposure thereto caused another inmate's death, extreme heat, exposure to black mold, poor air ventilation and second hand smoke, leaking and malfunctioning toilets, extremely overcrowded conditions, exposure to violent criminals equipped with knives, and cell door locks not working – when considered together, Plaintiff has stated enough to proceed beyond the

frivolity stage.[5]  *See, e.g., Jordan*, 38 F.3d at 1565 (finding plaintiff stated a due process claim regarding allegations that he was being held in overcrowded unsanitary local jails where food was contaminated and fire hazards existed because those conditions "implicate the deprivation of a 'single human need,' and if sufficiently severe, could constitute a deprivation of 'the minimal civilized nature of life's necessities'") (citations omitted); *Walker v. Schult*, 45 F.4th 598, 604 (2d Cir. 2022) ("[I]t is well-settled that a prisoner's Eighth Amendment rights . . . could be violated by, *inter alia*, prolonged exposure to extreme temperatures without adequate ventilation, conditions that prevent sleep, which is critical to human existence, unsanitary conditions in a cell, and conditions that place a prisoner at a substantial risk of serious harm from other inmates – as well as by overcrowding if combined with other adverse conditions.").

I would note, however, that Plaintiff has not alleged that he suffered a physical injury from any of these conditions, and thus cannot recover compensatory

---

[5]    Putting aside the fact that the well-documented conditions at the FCJ have been the subject of investigations by the Department of Justice and the Georgia Senate as well as numerous news reports, at this stage of the proceedings this Court can infer that Sheriff Labat and Chief Jailer Clark have knowledge of the obvious and substantial risks of, and have disregarded, the conditions at the FCJ.  *See, e.g., Farmer*, 511 U.S. at 841-43 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *Thompson v. Lengerich*, 798 F. App'x 204, 212 (10th Cir. 2019) ("It is reasonable at this stage of the litigation to infer that as BVCF's warden, he has actual knowledge of and participation in setting and maintaining BVCF's conditions.").

damages.[6] *See* 42 U.S.C. §1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."). Plaintiff, however, may recover nominal damages – typically $1 or $100, *Quainoo v. City of Huntsville, Ala.*, 611 F. App'x 953, 955 (11th Cir. 2015), and is not precluded from seeking punitive damages, *see Hoever v. Marks*, 993 F.3d 1353, 1363-64 (11th Cir. 2021).

## C.   **Motion for Appointment of Counsel**

Plaintiff also seeks appointment of counsel, partly because his imprisonment limits his ability to research the issues, and he claims that the issues are complex and he cannot afford counsel. (Doc. 5). "[W]hile civil plaintiffs have no right to counsel, the appointment of counsel is appropriate in exceptional circumstances . . . . 'The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court.'" *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1065 (11th Cir. 2013) (citations omitted). Plaintiff's allegations do not involve any overly complex matters.

---

[6]     The lack of physical injury does not prevent Plaintiff from proceeding on his conditions of confinement claims; rather, it only limits the type of recovery he may seek. *See Chandler*, 379 F.3d at 1289 ("Prisoners need not await a tragic event before seeking relief, [but] he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his health and safety.").

**IT IS ORDERED** that Plaintiff's motion for appointment of counsel [Doc. 5] is **DENIED** at this time. If the Court determines, at a later point in the proceedings, that Plaintiff requires appointed counsel, it will reconsider Plaintiff's request.

### III.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's failure to protect claim against Officer Thornton-Reid and conditions of confinement claims against Sheriff Labat and Chief Jailer Clark be **ALLOWED TO PROCEED** as any other civil action.

**IT IS FURTHER RECOMMENDED** that the remaining claims and Defendants be **DISMISSED** pursuant to 28 U.S.C. §1915A.

If this Report and Recommendation is adopted or any of Plaintiff's claims are otherwise permitted to proceed, the Clerk is **DIRECTED** to resubmit this matter to me for instructions on issuing and effecting service of process.

**SO RECOMMENDED** this 3rd day of November, 2023.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE